We're now going to hear United States v. Anthony No. 18-6047, and Mr. Sandiford, I take it you're ready. I'm ready. All right. Thank you very much. My name is Dean Sandiford, and I'm here for Curtis Anthony. This case turns on the fundamental principle that restitution has to be limited to losses that were caused by the offense. The order in this case violated that rule in two ways. First, it included losses caused by William Johnson, who committed his offenses against RW long before the offense in this case had even occurred. Second, to the extent that Mr. Anthony joined a conspiracy at all, it was limited to a conspiracy to have sex with these victims on the one night, not to further Maurice Johnson's business as a whole. But the restitution order held him accountable for all the harm that was done during these girls' times with Maurice Johnson, the entire three-week period. So both of these errors really go back to this fundamental rule that restitution has to be limited to losses that were caused by the defendant's offense. So to start and just take them in order the way they were in the briefs, the first issue has to do with the William Johnson prostitution ring, which occurred before the Maurice Johnson prostitution ring. There was no question below, and there's no question on appeal, that the district court's restitution order includes losses that were inflicted by William because the court included a lifetime's worth of costs of therapy. If William caused damage, and we know that he did, he obviously did, some of that is attributable to him. And it looks as if he has been held accountable for those. He's been convicted. He was ordered to pay R.W. $900,000 in restitution. The prosecutor said, I don't have that order. It's under seal. But we know that it was for, at least in part, for emotional trauma. But in any event, whether it included psychiatric services or not, some of the harm that's going to be treated over her lifetime therapy, which she obviously deserves, was caused by an offense that occurred months before even the conspiracy that my client was alleged to be part of was that. If there had never been a William, wouldn't the victims be as harmed as they are with a William? I think that's probably true. But applying just ordinary principles of but-for causation, but for the Maurice Johnson ring, so we're talking about one. I'm not talking about the one-night thing right now. But for the Maurice Johnson ring, these same damages would have happened. And they, in fact, happened before. And she's already been awarded restitution to cover those harms, too. So this really... Well, one thing I've been struggling a little bit with is that in a case where restitution is based, say, on a financial crime, you can come up with some numbers, who caused this to whom, and get to a figure. Here though, it seems like the largest component of the restitution order was to pay for counseling, lifelong counseling. And even if we accept your but-for argument, how is the court supposed to sort out who's responsible for what? Is it even possible to do that, especially in light of your answer to Judge Phillips's question? Right. Well, I think the short answer to your question is, we don't know because it hasn't been tried. There was no effort in the district court to separate out these losses at all. All the government had was an affidavit from a physician's assistant. Well, who bears... I mean, at one point, the district court said that the defendant had not shown that the... So there seems to me maybe a burden issue in there. Okay, and I'm happy to address the burden issue. Yeah. What do you have to say about that? The burden issue... And I don't think there's really a dispute about this in the briefs either. The government has the burden to show what losses were caused by the offense. If the defense is seeking an offset from that, then the burden is on the defense. We're not seeking an offset. An offset is for when, for example, you give back part of the stolen property. You steal $50,000 from someone and you give them back $25,000. Then you only have to pay them $25,000 in restitution. That's what an offset is. That has nothing to do with this case. Our only argument is that, and the government bore the burden on this, is what losses were caused by Mr. Anthony's offense. We're not asking for a discount. We're not asking for a reduction. We're asking for an accurate determination of the losses that his offense caused. So you're saying that she would have needed this counseling to the exact same degree and what Maurice Johnson did, or to them, I guess, not just to her, there's two victims here, but for what William Johnson did to her, to R.W. at least, did not cause any additional harm? That is not our position. Our position is that we don't know the answer to that question yet. Judge Ebell, if I were to hazard a guess, and this just hasn't been developed in the district court, there probably is additional harm. The continuation of this kind of abuse to a person is bound to cause additional harm. How can it be that someone just becomes completely damaged at the beginning and then nothing happens to them for the rest of the time? That's kind of an assumption that's been underlying this case because of one sentence in that affidavit, but it's not something that was ever tested in the district court. It would not surprise me in the least if some experts could come in and make some kind of all it needs to be for a restitution. It doesn't have to be precise. It doesn't have to be with exact precision. They just need to do the best they can of what additional harm was caused by these additional horrors that were inflicted on these two girls, or at least on R.W., because she's the only one, as you said, who was related to the first. So it is absolutely not our position, and I don't even think I can make that position on the record, that all the harm was done so our guy is O-0. That is not, we acknowledge he caused harm. He should be held accountable for that harm, but we don't know at this point what that harm is because the district court, at the government's urging, just decided to throw everything that happened to everybody on everybody. It's the easy way out, but it's not fair and it's not legal. The evidence that was submitted for R.W. about the counseling that is needed was largely duplicative of the same evidence that had been submitted from the first prostitution events, wasn't it? Well, I don't know because we don't have the William, at least I don't have access to the William Johnson restitution stuff. We were able to piece a little bit together from stuff that was set in our record from the judgment in William Johnson. Bunch of that stuff is under seal. The only thing really concrete that we have from the William Johnson case in our record is a victim impact statement that was from R.W. That victim impact statement is actually a lot more extensive and describes harms in much greater detail and much, it's a much more, they're both gut-wrenching to read. I would say the William Johnson one is more gut-wrenching to read. Maybe by the time, I don't know, I don't know why that's the case, but that's really all we have. We know the amount of restitution for William Johnson. That's more than the one in this case, but he also, he broke bones, he induced miscarriages. She got three STDs. There were harms that appear to have been done in that case, and again, all I have is a skeletal outline of that case because most of it's under seal that didn't happen in this case. So I'm not trying to- This is such a hard, I mean, these apportionments are so difficult, but I think that Paroline is probably not very dispositive because there was just, what was the harm of one extra person out of potentially thousands that have looked at some of these pornographic materials? There was no further direct interaction with the victims. In our case, we have direct interactions on two different occasions. So it somehow is going to be easier in our case to apportion what injuries occurred. Do you agree with that? I do agree with that. I do not think this is an analogous case to Paroline at all. Well, but Paroline isn't irrelevant because it does tell us that we've got to seriously try to make some allocation to the specific crime conviction. Yeah, exactly. And that's exactly what I was going to say is that I think Paroline is relevant kind of at the 20,000 foot level where you can't just, just because it's hard, you can't just pile it on everybody. So you need some witness that comes in and says what Maurice Johnson and his group did to RW enhanced her injury and enhanced the cost to her of rehabilitation and counseling to this degree. And we don't have that evidence. And we don't have that evidence. And it just wasn't even tried. It's not like they came in, put somebody on and said you can't do that. But how do we cope with the fact that Anthony apparently was uninterested in putting on any such evidence? Because it wasn't his burden, Judge Ebell. It was the government's burden to prove what losses were caused by this. But wasn't it his, I mean, isn't there some problem of, even though it was the government's burden, which I certainly agree with, isn't there some kind of a waiver of the issue or a failure to preserve the issue or a causing, leading the government into error to just sit back and say, I don't want any evidence. I don't want to go to a hearing. This was very, very well preserved. The response that my client's lawyer adopted went on for pages about how you've got to separate out what happened with William Johnson. You have to separate out. We didn't cause any of that. That happened before. But didn't Anthony express no interest in having further evidence in the hearing? There was no hearing at all. I know. He didn't want one. They didn't request a hearing, but the defense did make the argument that you can't hold us accountable for what William Johnson did, and that's what you're doing if you award a lifetime's worth of therapy at cost. At that point, it's the government's burden to say, well, yes, we can because of... I'm sorry. Can I ask you a couple of questions? I don't know what that is. I neglected to turn this off, apparently. It's like an Amber Alert. Yeah. I'm sorry. I apologize. I did neglect to turn that phone off today. Okay. First, so I understand for sure what you're saying before we leave. Are you saying that his restitution is confined to the events of October 24th? Yes. And that gets into my second issue, which I haven't had time to address yet. And that's the one I want to talk to you about next, which I assume is the conspiracy. That's great. Yes. All right. On the conspiracy, and you cite Ellis and other cases, Evans primarily, and I understand that in a drug conspiracy, relevant conduct, you strip off and you just go to that narrow conspiracy and then you determine how much weight there is. That's right. But is there a corresponding... He could have moved for a variance here, right? The conspiracy is too large, you say. Yeah. And he didn't. And so is there something corresponding to the relevant conduct situation and the Ellis and Evans situation with restitution? That's my question. Oh, I understand. No, there's not. And that's because we're still talking about restitution and restitution has to be limited to losses caused by the offense. So relevant conduct is carved out of restitution too. I don't think moving for a variance or even arguing for a variance on appeal, we didn't do that. It's not worthwhile. We wouldn't have won. There's no spillover prejudice from this. The prejudice, just like Caldwell, is at the sentencing. But I don't think relevant conduct can play any role whatsoever because it is restitution. That is the main difference between restitution loss and guidelines loss. Guidelines loss includes relevant conduct. Restitution loss is solely the offense. So we wish there had been an objection too. But if the offense is a big wide conspiracy, that's a problem. It is. And there wasn't evidence of a big wide conspiracy. The question is, what was the conspiracy that my client joined? And that's why we rely on Evans and Ellis to... Isn't it a question of what conspiracy your client got convicted of? Well, and we don't know the answer to that either. And that's for two reasons. One, the conspiracy that the prosecutor argued to the jury is the conspiracy that we're pushing at right now. It's that his agreement happened on October 24th and his sole goal was to have sex on that one night. That is exactly the conspiracy we're saying he was guilty of. What if you analogized to somebody who was shipping in cocaine by many ships and one guy said, I'll help you unload ship number four because I'm in town that day. It happens to be on my dock. And so he's then convicted of joining the conspiracy to bring all these ships in. Can he limit his liability just to that ship on dock four or does he buy into the entire deal? I think it's dock four under your opinion and Evans. I mean, that was Diana Bryce and Evans. She bought four ounces of crack cocaine knowing what else was going on, but that was the limitation of her participation in the conspiracy. And what this court said was that was her agreement. There was a bigger conspiracy, but you have to look at what her individual liability depends on what her agreement in the conspiracy is. So not all co-conspirators are equal. And you have to look at what their goal was. What was their common goal? And the only thing my client wanted, the only thing the government told the jury my client wanted was to have sex on that one night, not to further this overall business. But is there this is really this case is just fraught with hard issues. But was what about the argument that I could not have had sex with with R.W. or M.M. that night as a limited conspiracy? Because in order to enable me to have sex with him that night, it was necessary that you will have previously taken them in and exercise psychological control over them and prepared them and and gotten them compliant through these weeks of sexual slavery, basically. Right. And so I did buy into the whole conspiracy because what preceded this night was necessary for that night to occur. I know I'm over time. Thank you. So I have two short responses to that. And the first one is one, there's there's no evidence that he knew of the sexual slavery, all this stuff. He called a number and these girls showed up at his door. The second thing is, I think this is comparable to like a cocaine buyer knowing that when they buy cocaine, this this this drug is coming from Mexico. It's coming from these cartels that are murdering people in the streets. That doesn't make that buyer a conspirator with those people just because he knows that was kind of what led to where he was, because his sole agreement, he just wanted the drugs. And so that is on your cocaine case. Ordinarily, the government would charge you with buying cocaine on such a day, not conspiracy. That's true. And so that's the difference. I mean, if it was just buying sex that day, that would be an easy question, right? On the cocaine person, if he was charged, he probably would have gotten acquitted. But assuming he didn't and doesn't challenge the conviction, let's say he bought cocaine on one day, charged with a conspiracy, joining the conspiracy to bring it in from Mexico or Honduras or wherever. And he says, I plead guilty. I'm going to or at least I won't challenge on appeal the conviction for the conspiracy. Then then isn't he bound by the whole thing? Well, I would think, though, like in our situation, if he went to trial and he did appeal, I would think this court would overturn his conviction for insufficient evidence, which we don't have those facts here. But I think we have something close to those facts, because that's that was the position that when my buyer, my my my client was in, that he was he was a buyer of these services and all he cared was to receive the services. He didn't care anything about furthering. We have a conviction here of a conspiracy, right? That's true. And he is not challenging that conviction. Only because he can't show prejudice. And well, he's not challenging it. It's not on appeal. So so we accept that we accept that he was part of a conspiracy and that conspiracy was defined as the two or three week occasion. So it seems to me, I think maybe it was a trial strategy problem. He probably could have avoided that conspiracy. But but that's too late for us now, isn't it? No, please, please. OK, I just want to make sure I'm not using my time here. The indictment does allege that conspiracy, the government's argument to the jury of how to convict him of conspiracy was to say he called this number on this one night and his goal was to obtain sex on that one night. The jury instructions allowed conviction on that theory. The jury instructions didn't say in order to convict him, you have to find that he joined this business for these three weeks to maximize the profits of this thing. That's not how it was written. And even if it had been, if the evidence is insufficient, then the offense of conviction has to be what the evidence would support. So I don't think the breadth of the indictment can at all serve as kind of a backstop against insufficient evidence. Thank you. I appreciate the court's patience. Thank you, counsel. Good morning. May it please the court. I'm Mackenzie Anderson on behalf of the United States. This is a case with two child victims. They were 14 and 15 when Mr. Anthony bought them for sex. And one of those girls had never been trafficked or abused before. And the district court judge saw both girls. She saw them testify. She saw R.W. testify twice because there was another trial that happened before this one. And the judge reviewed the victim impact statement of R.W. and her mother. And a statement by the guardian ad litem appointed to represent M.M. Those are in the record and volume two of the sealed filings where they describe the trauma specifically in this case that was inflicted upon both of those girls. The district court specifically found in her order that those victim impact statements are credible, that they support proximate cause here, that this conspiracy and Mr. Anthony's substantive offense also caused these harms. As Justice Kennedy said in Paroline, proximate cause is a sufficient connection to the result. We've got sufficient connection to the result in spades here. Well, counsel, have you said anything so far that is in disagreement with with the appellant? Yes, your honor. So our argument is that. Well, let me let me maybe make it a little more specific. Why should Mr. Anthony have to pay restitution for harm that was caused earlier by William Johnson? Thank you. I the government is not conceding that any of the restitution order in this case is going to harm caused by William Von Trail Johnson. So it is not a double recovery or a windfall. The United States presented evidence in this case that R.W. and M.M. each needed between two hundred and ninety six thousand dollars and five million dollars in treatment over the course of their lifetime. What was that based on besides the victim impact statement that was based on the victim impact statements and based on Ms. Bryant, who submitted a declaration and had reviewed material and from authorities and reports of what it costs to treat a victim. Ms. Bryant distinguished between harm caused in the previous case by William Johnson and harm caused by the defendants in this case. She did. The court in this case has the letter that she submitted to the court in William Von Trail Johnson's case and the affidavit that she supported and that she entered in this case, which was specific to the facts of this case. And the victim impact statements were specific to these conspirators, not William Von Trail Johnson. And so I'd like to be clear. I think what I'm hearing you say is that there was no that the district court didn't have to apportion anything. Between the two cases, I believe that's right, but either way, we don't get to the top, the end of what treatment could be required, because in the other case, it was nine hundred thousand dollars. Even if you add the three hundred thousand dollars here, we're not to the treatment that RW could need because the court went below the bottom end of what Ms. Bryant estimated the cost of a lifetime of treatment would be. She excluded any inpatient treatment. She excluded any other types of expenses, more frequent counseling sessions than biweekly urban area counseling sessions. She went with the lowest possible bare minimum treatment, which was rural biweekly treatment, and then awarded below that. Let me ask it this way. Let's say calendar 2020 and each of these young girls have therapy. And so January 2020 therapy and the bill for the however many sessions is a thousand dollars for each of them. How much of that is William paying? How much of that is Mr. Anthony paying? Mr. Anthony is paying a thousand dollars because there's intervening causation here absent anything that happened before to these girls. And we know that because Ms. Bryant and the district court awarded the same amount to both RW and MM. And MM had no prior abuse or trafficking history. OK, that's for MM. But for RW. Yes. Is William getting a pass then if Mr. Anthony bill? No, no. And as the amicus in this case mentioned and as Justice Sotomayor did in her dissent in Paroline, there are options within the restitution statute that in the ends of justice, the court can later adjust the schedules of payments to ensure that there's fairness in the results of payments. But here, the goal of restitution is to make the victims whole. And our position is that even if everyone were to pay all of the amounts that they were ordered to pay, neither of these victims would be made whole. And in fact, Congress made a factual finding in 22 U.S.C. 7101 that adequate services and facilities do not exist to meet victims' needs regarding health care, housing, education, legal assistance to safely reintegrate trafficking victims. So it is they were not made whole by this order. There's no double recovery or windfall here because at the end of the day, R.W. is still not being awarded what she could need and treatment that her treating health care provider said would likely be necessary or would be necessary. Unless if we accept the high end figures, but no court has ever accepted, or at least Judge Cawthorne didn't accept those high end figures in our case. So we as appellate judges can't accept those high end figures. The court can accept she she adopted the reason what she said was reasonable, but it was below the bottom end. And this court is now looking to see whether there was an error there. And she based that judgment based on credibility assessments of the victims to find that their victim impact statements were credible and that there was proximate causation here and that that was a reasonable cost. But it excludes any inpatient treatment or any other things. And so our point is that there's not double recovery here and that it was based on credibility determinations that the judge made. There's no but. She was almost certainly suffered additional trauma because of the second prostitution ring. Yes. But. Did the expert testimony here seek to separate out incrementally what that second trauma would cost to remedy that was separate and distinct from from the the trauma from the first? The expert did not explicitly apportion it because she assessed what the trauma was in this case to calculate her figures and was her assessment. We had this thin skull doctrine, you know, that somebody's got a thin skull. And so yes, and that's the that's the defendant's problem. If you got a thin skull, that's just too bad for the defendant. You got to pay for the crushed skull, even if it was thin. And so was that the analysis here that she was she was unusually susceptible or vulnerable because of the first abuse for her? But that's the defendant's problem. That's Anthony's problem. And. I mean, that would take care of a causation question, but it doesn't take care of the amount of damages because the first person is still having to pay for making her skull thin. Then the second person. I mean, how do we know that there's not a duplication of of of a war? I don't I don't I don't have any idea how to figure this one out. I understand your honor, what courts have done in the past, what the Tenth Circuit did in the Erickson case in 2003 was to award joint and several restitution with it was a child pornography case. And the defendant argued that there was harm from other perpetrators. And the question is whether there's proximate causation here. If that answer is affirmative, then in terms of assessing the amount of restitution, it's how much it costs to make the victim whole. Once you have proximate causation, you do not for this offense, you do not then apportion it or offset it. What you would have to do would be an offset. And I think the position by the defendant here is that he was not arguing for an offset from this restitution award. Our position is that he wouldn't have met the requirements for an offset because it hasn't actually been paid. There's no evidence that has been paid or that it's the same loss. That, in fact, this is an independent loss that based on the judge's finding that MNRW get the same amount with MN having no trauma. The judge made the determination that this independently caused this harm, whether or not there was past trauma. Did the judge actually say that? The judge rejected the defendant's position that there should be a reduction for R.W. because she was a vulnerable victim. Let me just, I need some help then on understanding what the judge actually said, and I'm going from the order. Judge said there may be some overlap between the harm suffered by R.W. here and the harm suffered by William Vontrail in the William Vontrail-Johnson case. OK, that's the quote. But then, the judge said, the relevant law requires the court to make the victims whole in this case. What did the court mean by the relevant law? I think that what the court means is that 3664 requires the court to make the victim whole. If there's proximate causation, and I think in Paroline, there's language explaining that there isn't discretion once you've established proximate causation to then cut back on the proximate causation afterwards and apportion it with third parties, for example, such as in 3664. I don't remember, did the court ever actually do a proximate cause analysis? I thought that we were talking more about but-for cause. Well, the Supreme Court rejected but-for causation in the context of 2259 child sex offenses and said that it's a proximate cause analysis. And the district court said... What case is that? That's Paroline. All right. The court said that it does not require... It actually reversed the court and said it was too strict in requiring but-for causation. And that's the final paragraph of the Paroline decision. But Paroline is different because there's not a conspiracy and because there isn't a hands-on offense with an in-person encounter. Our position is that Mr. Anthony paid to rape this kid, and a rape is not less harmful and he doesn't get a discount because someone raped her earlier. And there are cases... Let me just... There's another passage. The court said there was an absence of evidence from defendants demonstrating that the award against William Johnson changed or altered the harm suffered in this case. Didn't the court err by putting the burden on Mr. Anthony to show that? Isn't the burden all on the government to demonstrate what the appropriate restitution should be? The burden is on the government. Right. So what did the court mean by that? It seems like the court's trying to put the burden on the defendant. I think that's almost correct in that it gets a little confusing when the argument is that R.W. has already been made whole by an earlier restitution award because that is an offset argument. Was that the argument? That was part of the argument. The argument is twofold, that number one, there's not proximate cause because part of the harm was caused by William Bontrail Johnson, and then the judge rejected that and said this offense caused this harm. And then the second part was saying there shouldn't be... Excuse me, I think you've just put your finger on something that has been the source of confusion. When you say this harm, what are you talking about? I am talking about the trauma that the victims experienced as a result of this conspiracy as described in the victim impact statements. But what about the harm that they experienced from William Johnson? That is a distinct harm. Okay, but did the government prove distinct harm? Yes, Your Honor. And how did it prove it when the physician's assistant included the harm caused by both? William Johnson on the one hand and the defendants here on the other hand. And did the physician's assistant separate that out and say, oh, there's $327,000 harm caused by these defendants, and then there was this much caused by Mr. Johnson? Restitution... Excuse me, did Ms. Bryant ever say that? No, because restitution doesn't require mathematical exactitude or precision. I'm not asking for exactitude. I'm just saying, was there any separate... Yes. And the court has to decide how much to allocate to the defendants. Did Ms. Bryant provide the court any basis on which to make that determination? I think Ms. Bryant and the victim impact statement provide a basis to make that determination. Ms. Bryant provides that basis in explaining, like in the D.C. Circuit case and Resealed case, that the amount of captivity doesn't change the harm. So even had this conspiracy started on October 24th or encompassed only the substantive offense that Mr. Anthony was convicted of, obtaining these girls in captivity at that point in time would have caused the trauma and need that would have required this treatment. So there's independent causation for this full extent of damages. How does Evans fit into this? Pardon me? Evans, the Evans case, the drug... The Evans case. Thank you. I believe that the Evans case is distinguishable, and that goes a little bit more to the length of the conspiracy and joint and several liability, because what we have here is a conspiracy under 1594C, which is a conspiracy to violate 1591. That is different than a drug conspiracy because it is both sides of the equation. So a drug conspiracy typically relates to distribution, the supply side. Human trafficking is different. In 1591, Congress criminalized lots of active verbs, recruiting, enticing, harboring, transporting, providing, obtaining, maintaining. It captures both the supply and the demand side of the equation, which makes this different than a drug conspiracy where having someone who obtains the drugs doesn't capture both sides of it. And here, where Mr. Anthony is an equivalent trafficker to the people who are supplying it, and a necessary person. And there was testimony by an expert that the demand, and folks like Mr. Anthony, fuel the supply. And that, as Judge Ebell said, a lot of the other parts of that conspiracy are necessary in order to provide that particular child to him in a state in which she is willing to have sex with a stranger. And because of that, shortening the conspiracy eliminates necessary steps of the conspiracy, and it eliminates acts that the defendant himself admits are not just foreseeable, but are necessary for that conspiracy to be successful. And there was testimony, which the court considered at sentencing and the jury considered at the trial, from an expert, that that demand is essential to the market, and there is causation in that him seeking out, and he called lots of numbers, there's testimony that he called lots of numbers, and chose this particular service, and that several people came into his building, so he met the co-conspirators. He recalls Maurice Johnson and Chelsea Griffin. He knew, or at the very least it was foreseeable, what risks were being, what he was taking on at this time. At the risk of repetition, let me just make sure I understand one part of your argument. So the restitution award to RW was this $327,000 figure. Yes. And it's your position that that figure represents a finding by the district court as to the damage caused by these defendants, and does not include any of the harm caused by William Johnson. That is our position. That, that, okay. Yes. And that his actions, like in Henry Seald's case, they found it exacerbated pre-existing problems in church. There's no lesser culpability for subsequent abusers who have personal encounters with the victim. And the Ninth Circuit recently, in Rocket, provided, or affirmed an award of future educational and occupational expenses, even though there were possible other costs. I just wondered if that was your position. Yes. But, so I think we've, we've reached over time for both of you. Thank you. I appreciate your argument, and appreciate both of your arguments, and the case will be submitted, and you're both excused. Thank you. Well, that concludes the morning. So, the court will stand in recess until tomorrow morning at 830.